***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Harris with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between plaintiff and defendant-employer until plaintiff resigned on May 22, 2008, effective June 13, 2008.
3. Defendant-employer is self-insured, and Key Risk Management Services is the third-party administrator.
4. Plaintiff's average weekly wage was $991.34, yielding a compensation rate of $660.92.
 *********** ISSUES
1. Whether plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on May 29, 2008?
2. If so, to what compensation, if any, is plaintiff entitled?
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms
 • Exhibit 3: Plaintiff's medical records (including supplemental records submitted post-hearing)
 • Exhibit 4: Parties' discovery responses
 • Exhibit 5: Transcript of plaintiff's recorded statement
A transcript of the deposition of Keith G. Harpe was also received post-hearing.
 *********** EVIDENTIARY MATTERS *Page 3 
On February 2, 2010, plaintiff filed a Motion to Reopen the Record with the Full Commission. Specifically, plaintiff requested that the parties be allowed to depose Dr. Henry Boucher and Ms. Kimberly Rikard, PA-C. Defendant objected to plaintiff's Motion on the grounds that plaintiff had ample opportunity to depose Dr. Boucher and Ms. Rikard following the April 16, 2009 hearing before the Deputy Commissioner, but declined to do so. The Full Commission, in its discretion, hereby DENIES plaintiff's Motion to Reopen the Record.
 ***********
Based upon all of the competent credible evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 50 years of age, with a date of birth of September 9, 1959. She currently resides in Baltimore, Maryland. Plaintiff has two bachelor's degrees and a master's degree in social work, all from Maryland state schools. Plaintiff also has a teaching certificate.
2. Plaintiff worked for defendant-employer as a special education teacher. During the 2007-08 school year, plaintiff taught at North Lenoir High School. Her work hours were 7:30 a.m. to 3:00 p.m.
3. In May 2008, the school's administrators informed plaintiff that her contract would not be renewed for the following school year, and plaintiff was given the option of resigning. On May 22, 2008, plaintiff submitted a resignation letter, in which she agreed to resign effective the end of the day on June 13, 2008.
4. On Thursday, May 29, 2008, at approximately 11:00 a.m., plaintiff had a five-minute break between classes during which she went to the restroom. Plaintiff entered the teachers' restroom, which plaintiff estimated to be about six feet by eight feet in size, she locked *Page 4 
the door, turned on the light switch, and proceeded to use the commode. Plaintiff did not want to sit down on the seat of the commode because she believed it was dirty. As plaintiff was straddling the commode holding her skirt up, the fluorescent light on the ceiling snapped and flickered, startling her, and she lost her balance, falling to her right and landing on the floor between the commode and the tiled wall.
5. Plaintiff injured her right hip and twisted her right ankle in the fall.
6. Immediately after the fluorescent light flickered, the fire alarm in the school building began to sound, and the building lost power. The school's principal confirmed that there were electrical problems at the school that day involving an initial power surge at approximately 11:00 a.m., and a subsequent power outage.
7. Following her fall, plaintiff cleaned herself up and exited the restroom, and then completed her teaching duties for the day. Plaintiff was embarrassed by what had happened, and she did not immediately tell anyone about her fall. Because of the power outage, school was dismissed early that day, at approximately 1:15 p.m. Plaintiff helped to dismiss the students and then remained at the school until the teachers were dismissed.
8. That night, plaintiff had trouble sleeping because of pain in her right hip and right ankle. At approximately 3:00 a.m., plaintiff telephoned the school's automated system to notify the school that a substitute teacher would be required for her the following day.
9. On the morning of Friday, May 30, 2008, at approximately 9:00 a.m., plaintiff telephoned the school and notified the principal of her fall in the restroom the previous day and her injuries. Plaintiff completed a Form 18 that day, and it was filed with the Industrial Commission on June 16, 2008.
10. Plaintiff did not work for defendant-employer after May 29, 2008. *Page 5 
11. Defendant-employer did not direct plaintiff to a provider to obtain medical treatment. Plaintiff initially tried to obtain treatment through her primary care provider, but was told that they did not accept workers' compensation cases and that she would need to go to an urgent care facility or emergency room.
12. Plaintiff went to the emergency room at Craven Regional Medical Center on June 2, 2008, complaining of pain in her right ankle and right hip that had started with her fall five days earlier. X-rays of Plaintiff's right ankle and right hip appeared normal. A physical examination performed by Dr. Keith Harpe revealed mild tenderness in the right hip and swelling of the right ankle. Dr. Harpe diagnosed sprains of the right hip and right ankle and prescribed Vicodin and wrote plaintiff out of work for two days.
13. When her pain persisted, plaintiff presented to her primary care provider, Dr. Kent V. Lucas, on June 6, 2008 using her own health insurance. Dr. Lucas agreed with the emergency room diagnosis, increased plaintiff's pain medications, and wrote her out of work through June 9, 2008. Dr. Lucas advised plaintiff that she would simply have to allow the injuries time to heal.
14. On June 9, 2008, plaintiff presented to Kim Rikard, PA-C of Carolina Orthopedics Sports Medicine, who also agreed with the emergency room diagnosis. Ms. Rikard continued plaintiff's medications, put her in a walker boot for her right ankle, and wrote her out of work through June 13, 2008.
15. Plaintiff saw Ms. Rikard twice more, on June 25 and July 21, 2008, for her continuing right hip and right ankle symptoms. However, June 13, 2008 was the last date on which plaintiff was written out of work.
16. Defendant denied this claim via a Form 61 dated July 29, 2008. *Page 6 
17. Plaintiff obtained a teaching job in Baltimore, Maryland, which started on August 10, 2008. Plaintiff earns a higher salary in that position than she did with defendant-employer.
18. On October 27, 2008, plaintiff saw Dr. Henry R. Boucher, an orthopedist in Baltimore, for her right hip pain. When providing her medical history, plaintiff did not recount the May 29, 2008 fall; rather, it was noted that she "(did) not recall any major fall or twisting injury." She complained of pain "deep in the groin" that was likened to "a chronic toothache." Dr. Boucher diagnosed "right hip pain" and ordered an MRI pursuant to a work-up for osteonecrosis. There are no further records from Dr. Boucher in evidence. Dr. Boucher was not deposed, and there is no evidence in this record that plaintiff's hip condition as of October 27, 2008 was causally related in any way to the May 29, 2008 accident.
19. Dr. Harpe is a practitioner of emergency medicine. As he testified, to a reasonable degree of medical certainty, plaintiff's right hip and right ankle sprains were related to her fall in the restroom at work on May 29, 2008. As he further testified, the injuries he observed were relatively mild sprains, and he would have expected plaintiff's right hip and right ankle injuries to have resolved within one to two weeks.
20. Plaintiff had a left hip replacement in March 2006 but did not have significant problems with her right hip or right ankle in the months leading up to her May 29, 2008 accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW *Page 7 
1. Plaintiff sustained a compensable injury by accident to her right hip and right ankle arising out of and in the course of her employment with defendant-employer on May 29, 2008. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury by accident, plaintiff was totally disabled from May 30, 2008 through June 13, 2008, in that she was medically unable to work in any capacity during that period. As such, plaintiff is entitled to receive temporary total disability compensation for the period of May 30, 2008 through June 13, 2008, less the statutory seven-day waiting period. N.C. Gen. Stat. §§ 97-28 and 97-29.
3. Plaintiff has not shown that she was disabled after June 13, 2008. Prior to sustaining her compensable injuries, plaintiff had already voluntarily resigned her position effective June 13, 2008, and she thus had no position to return to after that date. Further, given plaintiff's educational background and work experience, and the lack of any documented work restrictions beyond June 13, 2008, the Full Commission concludes that plaintiff had substantial wage-earning capacity after June 13, 2008. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
4. Plaintiff is entitled to have defendant pay for the medical treatment she received for her compensable right hip and right ankle injuries through her July 21, 2008 appointment with Ms. Rikard, all of which treatment was reasonably required to effect a cure, provide relief and/or lessen plaintiff's period of disability. Plaintiff has not shown that her right hip condition beyond July 21, 2008 is causally related to her compensable right hip injury, nor has she shown that she required any further treatment for her right ankle injury beyond July 21, 2008. N.C. Gen. Stat. §§ 97-2(19) and 97-25. *Page 8 
5. Defendant has defended this claim with reasonable grounds, and therefore, plaintiff is not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee provision below, defendant shall pay plaintiff, in a lump sum, back temporary total disability compensation in the amount of $755.36, representing eight days' worth of temporary total disability compensation for the period from May 30, 2008 through June 13, 2008, less the seven-day statutory waiting period.
2. As plaintiff's attorney's fee, defendant shall deduct 25 % of the sum set forth in Paragraph 1 above, and pay said portion directly to plaintiff's counsel.
3. Defendant shall pay for the medical treatment that plaintiff received for her compensable right hip and right ankle injuries from June 2, 2008 through July 21, 2008 with and/or at the direction of Dr. Harpe, Dr. Lucas and/or Ms. Rikard, including but not limited to diagnostic testing and imaging, prescriptions, the walker boot, and mileage. To the extent that plaintiff or any third-party payor paid for such treatment, defendant shall reimburse such payor(s) in full.
4. Defendant shall pay the costs. As part of their costs, if they have not done so already, defendant shall pay an expert witness fee to Dr. Harpe in the amount of $354.00 or the amount actually billed, whichever is less.
This the 15th day of June, 2010. *Page 9 
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER